UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

| | |
|---|---|
| LAWRENCE TACHIBANA, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) No. 07-CV-00364 |
| v. | ) |
| | ) Hon. Marvin E. Aspen |
| COLORADO MOUNTAIN | ) |
| DEVELOPMENT, INC., et al., | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Court Judge:

On January 13, 2009, Plaintiffs Lawrence Tachibana, et al., filed a sixteen-count amended complaint against the following defendants: (1) Colorado Mountain Development, Inc., d/b/a Lone Oak Land Development Company, L.P.; (2) Lone Oak Land Management, LLC; (3) C.M.D. Management, Inc.; (4) 3D Resorts, Inc.; (5) William Hannah; (6) Bank of America, N.A.[1]; and (7) Jerry Dunn. In response, each of these Defendants filed a counterclaim against Lawrence and Lisa Tachibana (but not the other Plaintiffs), seeking indemnification, contribution, equitable subrogation and/or reimbursement for judgment rendered against them in this matter. Defendants[2] allege that the Tachibanas' conduct in recruiting their friends to purchase lots at the Village of Lone Oak ("Villages") subjects them to liability should the other

---

[1] All claims filed by and against Bank of America have been dismissed. We will consider the arguments included in its opposition to the present motion, however, because other Defendants/Counterclaim Plaintiffs joined in that opposition. We will cite to the Bank of America brief as "BOA Resp." as necessary hereafter.

[2] We will refer collectively to the Defendants/Counterclaim Plaintiffs simply as "Defendants."

Plaintiffs prevail with their claims against Defendants. Presently before us are two similar motions for summary judgment filed by each of the Tachibanas, seeking dismissal of all the counterclaims.³ As set forth below, we grant Lisa's motion. We also grant Lawrence's motion in part and deny it in part.

**BACKGROUND FACTS**[4]

The parties do not dispute the essential facts relevant to this motion. That is, there is no dispute as to what the Tachibanas did when telling their friends about the Villages. Rather, the parties dispute the significance of those facts.

For their part, the Tachibanas each submitted a brief, largely conclusory affidavit, stating simply that they "were not actively involved in the marketing or sale of Villages . . . lots to the other Plaintiffs in this case." (La. Tachibana Facts ¶ 4 & Decl. ¶ 3; Li. Tachibana Facts ¶ 4 & Decl. ¶ 3.) Lawrence further declares that he was not employed by any of the Defendants. (La. Tachibana Facts ¶ 4 & Decl. ¶ 4.) Lisa states that she was not her husband's agent "with regards to Plaintiffs' purchases." (Li. Tachibana Facts ¶ 5 & Decl. ¶ 4.) In their affidavits, the Tachibanas do not acknowledge, even to downplay, the alleged role they played in introducing

---

³ Hannah did not respond to the Tachibanas' motions. It is not clear, however, that Hannah received notice of the motion or briefing schedule. Hannah's lawyer withdrew, effective September 25, 2009, and the parties and court had trouble finding him since that time. (*See also* Dkt. No. 189, Order granting mot. to withdraw.) Indeed, at least two court notices sent to Hannah at a Loveland, Colorado address were returned, after the instant motions were filed in January 2010. (*See* Dkt. No. 329, 3/19/10 Notice returned unexecuted; Dkt. No. 415, 6/16/10 Notice returned unexecuted.) Given this concern regarding notice to Hannah, we will assume that Hannah did not receive notice of the pending motions, and we will consider his counterclaims in the same light as those defendants who did respond.

⁴ Unless otherwise noted, the facts described in this memorandum are undisputed and derived from the parties' Local Rule 56.1 statements of facts and exhibits.

the Villages and its salesperson, William Hannah, to Plaintiffs.

Defendants, however, point to record evidence describing the Tachibanas' interactions with the other Plaintiffs about the Villages. Lawrence had known Hannah for several years before investing in the Villages; they were hunting and fishing buddies. (BOA Facts ¶ 3 & Ex. A, La. Tachibana Dep. at 36.) One year, Hannah and his family spent Christmas with the Tachibanas in Hawaii. (*Id.*) Of the Plaintiffs, the Tachibanas were the first to buy into the Villages. (Dunn Facts ¶ 2.) Lawrence met with Hannah in April 2005 to make deposit on the Tachibanas' lots at the Villages. (Dunn Facts, Ex. B, La. Tachibana Dep. at 83, 85.) Lawrence was quite excited about the Villages development and the potential to double his money by selling his lots in two years when the project was completed. (BOA Facts, Ex. A., La. Tachibana Dep. at 142–43.)

Given his excitement, Lawrence told Hannah that he would tell his friends about this "unreal" opportunity to make money by investing in the Villages. (*Id.* at 143.) On or around April 20, 2005, Hannah offered to give Lawrence a referral fee from his commission, if the Tachibanas' friends bought into the Villages. (*Id.* at 143–44.) He promised to pay Lawrence 3% for direct referrals and 2.25% for indirect referrals, based on the sales price of any lots purchased by their contacts.[5] (*Id.* at 143–44, 147–48; Compl. ¶ 27.) The Tachibanas "introduced [Hannah]

---

[5] At oral argument, Plaintiffs' counsel contended that Lawrence participated only in Lone Oak Development's "coupon" referral program. According to counsel, every Villages owner received coupons redeemable for a commission if the owner brought new people to the development. Lawrence did not raise this coupon issue prior to oral argument, however. Moreover, Lawrence's testimony and documentary evidence discussed herein unequivocally establish that Lawrence did not participate in the Villages' program but had his own referral agreement with Hannah. (*See* BOA Facts, Ex. A., La. Tachibana Dep. at 142 (testifying that he did not participate in the Villages' referral program); Pls.' Facts in Opp. to Dunn/CMD MSJ, Ex. 18, La. Tachibana 6/10/08 Decl. ¶ 7 (stating that Hannah offered to pay him a referral fee out of

to a number of individuals, some of whom purchased lots from Defendants." (Compl. ¶ 28.) Lawrence testified that he told his friends that he and Lisa were investing in the Villages, that the opportunity was relatively inexpensive, and that they "were guaranteed to double [their] money in a couple years." (BOA Facts, Ex. A., La. Tachibana Dep. at 148–49.) Based on Hannah's presentations and promises, the Tachibanas "wholeheartedly recommended the Villages to their fellow Kauai residents." (Compl. ¶ 27; BOA Facts, Ex. A., La. Tachibana Dep. at 149.)

For his referrals, Lawrence received at least $20,000 from Hannah. (Dunn Facts ¶ 6 & Ex. D, Copies of various checks; *see also* Dunn Facts, Ex. C, Referral record (noting that certain checks were rejected for insufficient funds).) Hannah made all of the checks out to Lawrence individually. (Dunn Facts, Ex. D, Copies of various checks.) Lawrence apparently kept a record of his direct and indirect referrals about the Villages and of his commissions due from Hannah.[6] (Dunn Facts, Ex. C, Referral record (titled "Lawrence's Record of Referral's").) According to this record and his deposition testimony, Lawrence told several of the Plaintiffs—the Brays, Roger Braun, Albert Leong, and the Scribners—about the Villages. (*Id.*; Dunn Facts, Ex. B. La. Tachibana Dep. at 95–102.) For example, it is undisputed that Lawrence told Robert Bray that the Villages was a good investment and, a few days later, called Hannah on his cell phone and then handed the phone to Bray. (BOA Facts, Ex. C, Bray Dep. at 45, 52–53.)

According to Lisa's deposition testimony, she and Lawrence also told her sister, Sharon,

---

his own earnings "instead of utilizing the Villages referral incentive program") (Dkt. No. 437-19 at 61).)

[6] The record is unclear whether Lawrence, Hannah or both created this log. However, we draw the reasonable inference against Lawrence in this instance and thus assume that he personally maintained this record. (*See* Dunn Facts, Ex. B. La. Tachibana Dep. at 95 (discussing a document that sounds like the referral log and stating that Hannah sent it to Lawrence).)

about the Villages development. (BOA Facts, Ex. D, Li. Tachibana Dep. at 127–28, 130–32.) Lisa testified that she did not introduce Sharon, or anyone, to Hannah. (*Id.* at 132–33, 192.) Lisa stated that although she told Sharon about the Tachibanas' excitement in the Villages, she neither encouraged, nor discouraged, Sharon to participate. (*Id.* at 192–93.) Lisa also testified that she did not personally have a referral arrangement with Hannah. (*Id.* at 132.) Sharon is not a party to this lawsuit.

## STANDARD OF REVIEW

Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). A genuine issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). This standard places the initial burden on the moving party to identify those portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (internal quotations omitted). Once the moving party meets this burden of production, the nonmoving party "must go beyond the pleadings" and identify portions of the record demonstrating that a material fact is genuinely disputed. *Id.*; Fed. R. Civ. P. 56(c). In deciding whether summary judgment is appropriate, we must accept the nonmoving party's evidence as true, and draw all reasonable inferences in that party's favor. *See Anderson*, 477 U.S. at 255.

## ANALYSIS

### I. Lisa Tachibana

In her motion and supporting affidavit, Lisa contends that she played no part in the

marketing of the Villages to the other Plaintiffs and thus cannot be liable on the counterclaims. (Li. Tachibana Mem. at 4–5; Li. Tachibana Reply at 1, 3, 6.) Although Defendants characterize Lisa's position as entirely self-serving, the evidence corroborates her argument. Nearly all of the evidence cited by Defendants is *Lawrence's* deposition testimony, describing his relationship with Hannah, his conduct in bringing Plaintiffs to the Villages and Hannah, and his referral arrangement and payments.

Although the complaint states that Hannah offered commissions to the Tachibanas as a unit (Compl. ¶ 27), the evidence before us belies this allegation. The Tachibana family certainly was friendly with Hannah given his social relationship with Lawrence. Yet the record demonstrates that only Lawrence dealt with Hannah concerning the Villages. Lawrence, not Lisa, told Hannah that he was willing to spread the good word about the Villages to his friends. Lawrence discussed the terms of the referral agreement with Hannah, but Lisa denied any involvement in, or even knowledge of, those discussions. Defendants' suspicions about what Lisa might have known about the referral agreement are not sufficient to contradict her testimony on this point. Moreover, the referral record is entitled "Lawrence's Record" and indicates how much "Bill Hannah owes Lawrence Tachibana"; it never mentions Lisa. (Dunn Facts, Ex. C, Referral record at 2.) Hannah made out every referral check payable to Lawrence alone. (Dunn Facts, Ex. D, Copies of various checks.) These facts do not suggest that Lisa was involved in the referral arrangement.

Most importantly, it is undisputed that Lisa did not refer any of the Plaintiffs to Hannah or the Villages. Defendants stress that Lisa recruited her sister, Sharon, to buy a lot in the Villages. (BOA Resp. at 8–9; Dunn Resp. at 5; *see also* BOA Facts, Ex. D, Li. Tachibana Dep.

at 127–28, 130–32.) Even assuming that Lisa actively wooed Sharon on behalf of Hannah and the Villages, Sharon is not a plaintiff in this lawsuit. Defendants' counterclaim against Lisa thus cannot be based on Sharon's purchase of a lot at the Villages. Although Defendants imply that Lisa's solicitation of her sister raises a question about her level of involvement in marketing the Villages to Plaintiffs with her husband (BOA Resp. at 12), we conclude that drawing such an inference would be unreasonable in light of the evidence to the contrary. Defendants have failed to come forward with any proof that Lisa recruited Plaintiffs, marketed the Villages or otherwise encouraged Plaintiffs to invest. Accordingly, summary judgment in Lisa's favor is warranted.

## II. Lawrence Tachibana

We turn now to address the merits of Lawrence's motion. Given that the facts are not so clear cut as to him, we consider in more detail the claims at issue. In their counterclaims, Defendants seek indemnification, contribution, equitable subrogation and/or reimbursement from Lawrence for any judgment against them in the underlying action. (CMD & Lone Oak Countercl. ¶ 13; Dunn Countercl. ¶ 10; 3D Countercl. ¶ 15; C.M.D. Mgmt. Countercl. ¶ 14; Hannah Countercl. ¶ 9.[7]) As Lawrence points out, however, Defendants do not mention their equitable subrogation and reimbursement claims in their opposition briefs. (La. Tachibana Reply at 1 n.1; *see* BOA Resp. at 10–12 (focusing on indemnification claim); Dunn Resp. at 9–10 (focusing on indemnification and contribution only).) As Defendants have abandoned these theories, we will consider only the contribution and indemnification claims.

---

[7] Defendants' filed the operative counterclaims in 2009. The counterclaims appear as docket entries 117 (CMD & Lone Oak entities), 118 (Hannah), 125 (C.M.D. Mgmt.), 135 (BOA), 162 (3D Resorts ), 169 (Dunn). They are also attached as exhibits to the pending motions. (*See* La. Tachibana Facts, Exs. C–H.)

A.  **Contribution**

In their primary briefs, the parties surprisingly fail to mention that contribution in Hawaii is governed by state statute.[8] "The Uniform Contribution Among Tortfeasors Act [UCATA] created a right of contribution among joint tortfeasors which previously did not exist at common law." *Campo v. Toboada*, 65 Haw. 505, 507, 720 P.2d 181, 183 (Haw. 1986). The purposes of UCATA include: (1) avoiding "the injustice of having one joint tortfeasor pay more than his fair share of damages;" and (2) preventing "multiplicity of suits." *Id.*; *see* H.R.S. §§ 663-10.9, 12, 17.

Under UCATA, a tortfeasor "becomes entitled to a money judgment of contribution against the other joint tortfeasors only by discharging the common liability to the injured person or by paying more than a pro rata share of the liability." *Velazquez v. Nat'l Presto Indus.*, 884 F.2d 492, 495 (9th Cir. 1989); *see* H.R.S. § 663-12 (discussing the liability of tortfeasors and explaining that "the relative degrees of fault of the joint tortfeasors shall be considered in determining their pro rata shares"). An action for contribution arises where "two or more persons become liable in tort to the same person for the same harm." *SCD RMA, LLC v. Farsighted Enters., Inc.*, 591 F. Supp. 2d 1141, 1147 (D. Haw. 2008) (internal quotation omitted). Pursuant to UCATA, and as discussed generally in the relevant Restatement,[9] a contribution action seeks "recovery of a proportionate part of the sum paid by the plaintiff on the

---

[8] Lawrence refers to the statute only in his reply brief. (La. Tachibana Reply at 6.)

[9] Hawaii courts rely on the Restatement (Second) of Torts when evaluating questions of contribution and indemnification, and similar principles. *Brooks v. Dana Nance & Co.*, 113 Haw. 406, 416, 153 P.3d 1091, 1101 (Haw. 2007); *see SCD RMA, LLC*, 591 F. Supp. 2d at 1146.

ground that the parties were both guilty of negligence and should share the cost." Restatement (Second) of Torts § 886B(1) cmt. a (1979); *see also* H.R.S. § 663-12 (providing that if "there is a disproportion of fault . . . as to render inequitable an equal distribution among them of common liability," pro rata shares shall be assigned according to the "relative degrees of fault"). Of particular relevance here, "whether contribution may be had from a person depends upon whether the original plaintiff could have enforced liability against him, had he chosen to do so." *Peterson v. City and Cty. of Honolulu*, 51 Haw. 484, 486, 462 P.2d 1007, 1008 (Haw. 1970) (holding that a counterclaim by the city against the minor plaintiff's parents should have been allowed, because the minor could have sued her parents).

The parties did not adequately address this counterclaim. For example, Defendants Dunn and CMD mention contribution but fail to present any law or argument in support of their opposition to the motion. The BOA response brief, adopted by the all defendants except for Hannah, does not mention contribution at all. Lawrence himself does not really focus on this counterclaim until his reply brief.

Even if Lawrence had thoroughly vetted this issue, he is not entitled to summary judgment. In his briefs, Lawrence generally focuses only on his sanitized version of the facts, insisting that he did not market the Villages to the other Plaintiffs. (*See* La. Tachibana Mem. at 4–5; La. Tachibana Reply at 6–7.) The evidence put forth by Defendants, however, raises genuine questions of material fact about Lawrence's participation in one of the alleged torts underlying Plaintiffs's claims. *See Peterson*, 51 Haw. at 486, 462 P.2d at 1008 (explaining that a UCATA defendant's liability depends on his or her potential liability to the original plaintiff in the underlying suit).

Lawrence concedes that he recruited some of the Plaintiffs, told them that they would double their money in a couple years, and accepted referral fees from Hannah for doing so. (*See* Dunn Facts, Ex. B., La. Tachibana Dep. at 95–102, 142–44, 147–49.) Moreover, Lawrence referred Plaintiffs to Hannah for investment in the Villages apparently without conducting his own due diligence; he testified that he told his friends about the Villages based on Hannah's presentation. (BOA Facts, Ex. A, La. Tachibana Dep. at 149; *see also* Compl. ¶ 27.) Under these facts, the other Plaintiffs theoretically could have asserted their claim for negligent misrepresentation against Lawrence.[10] *See, e.g.*, *Hawaii Motorsports Inv., Inc. v. Clayton Group Servs., Inc.*, 693 F. Supp. 2d 1192, 1199–1200 (D. Haw. 2010) (setting forth the requirements of a negligent misrepresentation claim: "(1) false information . . . supplied as a result of the failure to exercise reasonable care or competence in communicating the information; (2) the person for whose benefit the information is supplied suffered the loss; and (3) the recipient relies upon the misrepresentation" (internal quotation omitted)). If Lawrence could be found liable to Plaintiffs, he thus could be considered joint tortfeasors with Defendants. *Peterson*, 51 Haw. at 486, 462 P.2d at 1008. Under the facts before us, a reasonable jury could conclude that Lawrence is liable to Defendants, at least in part, should Plaintiffs prevail on their negligent misrepresentation claim.

---

[10] The negligent misrepresentation claim against Defendants appears as Count VI of the complaint. (*See* Compl. ¶ 102.) Based on our review of the complaint, our understanding of the various causes of action asserted therein, and the evidence presented to date, none of the other fifteen counts against Defendants could have been brought appropriately against Lawrence. For example, Plaintiffs could not have plausibly alleged that Lawrence breached any of their contracts, committed fraud or intentional misrepresentation, or violated the Hawaiian statutes at issue. Accordingly, only the negligent misrepresentation claim factors into our contribution analysis.

B.     **Indemnification**

In Hawaii, "indemnification can be imposed when 'two persons are liable in tort to a third person for the same harm and one of them discharges the liability of both.'" *SCD RMA, LLC*, 591 F. Supp. 2d at 1146–47 (quoting Restatement (Second) of Torts § 886B(1)). Generally speaking, indemnification differs from contribution in that "a suit for indemnity is brought to recover *the total amount* of payment by the plaintiff, on the ground that the plaintiff's conduct was not as blameworthy as the defendant's." Restatement (Second) of Torts § 886B(1) cmt. a (emphasis added). Through litigation, fault is attributed among "the participating wrongdoers so as to justify the imposition of the entire loss on the one who is regarded as the principal offender." *In re All Asbestos Cases*, 603 F. Supp. 599, 606–07 (D. Haw. 1984). Where no express contract exists between the parties, indemnification may be "based on . . . a contract implied-in-fact, or equitable concepts relating to a special legal relationship between the tortfeasors." *SCD RMA, LLC*, 591 F. Supp. 2d at 1147; *see also* Restatement (Second) of Torts § 886B(2) & cmts. d, k (describing the types of commonly-accepted relationships giving rise to indemnity).

According to Defendants, Lawrence's motion must be denied because the record supports a conclusion that he was actively negligent in marketing the Villages to his friends. (BOA Resp. at 9–10; Dunn Resp. at 9–10.) They contend that Lawrence was thus the principal tortfeasor, while they could be only passively or secondarily at fault. (BOA Resp. at 12; Dunn Resp. at 10.) In response to this argument, Lawrence points out that Defendants failed to demonstrate any "special legal relationship" between them that might give rise to an indemnity obligation. (La. Tachibana Reply at 4–6.) *SCD RMA, LLC*, 591 F. Supp. 2d at 1147.

Although there is evidence that Lawrence solicited and encouraged his friends to purchase lots at the Villages, Defendants failed to offer any evidence of a special legal relationship creating an indemnification duty. Indeed, Defendants have not even alleged in the counterclaims that such a relationship existed.[11] (*See, e.g.*, Dunn Countercl. (containing no factual allegations describing a special relationship between the parties).) Thus, leaving aside the question of Lawrence's personal culpability, he cannot be liable to Defendants for indemnification. We thus grant Lawrence's motion as to the indemnification claim.

## CONCLUSION

For the reasons discussed above, we grant Lisa Tachibana's motion in full. We grant Lawrence's motion as to the indemnification claim, as well as the abandoned subrogation and reimbursement theories. We deny Lawrence's motion as to the contribution claim to the extent that it is based on Plaintiffs' underlying cause of action for negligent misrepresentation. It is so ordered.

_____
Marvin E. Aspen
United States District Judge

Dated:   Chicago, Illinois
         April 5, 2011

---

[11] It is undisputed that Hannah and Lawrence had a referral agreement and personal relationship, but not even Hannah's counterclaim includes factual allegations suggesting that Lawrence had a duty to indemnify Hannah, whether by express or implied contract or "special legal relationship." (*See* Hannah Countercl. ¶¶ 7–9.)