**UNITED STATES DISTRICT COURT**
**DISTRICT OF HAWAII**

| | | |
|---|---|---|
| LAWRENCE TACHIBANA, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 07 C 00364 |
| | ) | Hon. Marvin E. Aspen |
| COLORADO MOUNTAIN DEVELOPMENT, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**ORDER**

MARVIN E. ASPEN, District Court Judge:

As described below, most of the parties to this lawsuit agreed to settle this action months ago but they have been unable to file a fully-executed stipulated dismissal. They cannot file a stipulated dismissal because one of the parties, William Hannah, has repeatedly refused to provide an original, executed signature page for the settlement agreement. Yet Hannah has neither objected to the terms of the agreement nor actively participated in this action for more than two years. We cannot allow this case to linger unresolved on the docket due simply to Hannah's intransigence.

As set forth in more detail below, we order counsel for the parties—and pro se litigant Hannah—to appear for a hearing in person at the United States Courthouse for the District of Hawaii, 300 Ala Moana Boulevard, Honolulu, Hawaii, on December 4, 2015 at 10:00 a.m. (Honolulu time).

**BACKGROUND**

Plaintiffs initially filed this lawsuit in 2007 based on their investment in a development for a residential subdivision in Texas called The Villages at Lone Oak ("the Villages"), which

ultimately failed to materialize. The amended complaint filed January 13, 2009 raised sixteen claims, primarily sounding in fraud, against seven defendants: (1) Colorado Mountain Development, Inc., d/b/a Lone Oak Land Development Company, L.P. ("CMD"); (2) Lone Oak Land Management, LLC; (3) C.M.D. Management, Inc.; (4) 3D Resorts, Inc.; (5) William Hannah; (6) Bank of America, N.A.; and (7) Jerry Dunn. Hannah was a land sales representative for the Villages and personally solicited Plaintiffs' property purchases. (Am. Compl. ¶¶ 23–28.) Plaintiffs alleged that Dunn owned and controlled the development companies involved in the sale and construction of the Villages. (*Id.* ¶¶ 17–18.)

In response to the complaint, Defendants—including Hannah—filed counterclaims against two of the plaintiffs, Lawrence and Lisa Tachibana, seeking indemnification, contribution, equitable subrogation and/or reimbursement for judgment rendered against them in this matter.[1] (*See* Dkt. No. 6 (Hannah Ans. & Counterclaim).) Dunn, in his personal capacity, also filed a cross-claim against several defendants, including Hannah, seeking indemnity, contribution, subrogation and reimbursement.[2] (Dkt. No. 177 (Dunn Cross-Claim).) Hannah's counsel withdrew representation on September 29, 2009, shortly after Dunn filed his cross-claim. (Dkt. No. 189). Hannah has proceeded pro se since that time.

In early 2010, Dunn sought default judgment on the cross-claim against Hannah. (*See* Dkt. Nos. 291, 294, 297.) Although Plaintiffs opposed the motion, suspecting Dunn of

---

[1] Various claims and counterclaims were filed, some of which were previously dismissed by motion practice. (*See* Dkt. Nos. 449, 475–76 (resolving various motions for summary judgment).)

[2] Although not immediately relevant, other parties also filed cross-claims, some of which remain pending. (*See, e.g.*, Dkt. Nos. 135, 231, 469.)

gamesmanship, Hannah did not file any opposition to the motion or appear at the hearing before Magistrate Judge Kurren. (*See* Dkt. Nos. 308, 344, 397.) At the time, notices mailed to Hannah by the clerk typically were returned as undeliverable. (*See, e.g.*, Dkt. Nos. 375–76, 384, 393, 405, 410; *see also* 4/5/11 Op. (Dkt. No. 474) at 2 n.2).) On May 11, 2010, Judge Kurren recommended that we grant the motion. (Dkt. No. 397.) Plaintiffs objected to Judge Kurren's recommendation. (Dkt. No. 409.) On April 5, 2011, we adopted Judge Kurren's recommendation in part. We agreed with Judge Kurren that default was warranted against Hannah but declined to order any remedy because Dunn had not provided any evidence of damages or other appropriate remedies. (4/5/11 Op. at 3–4.) We indicated that we would revisit the issue if it ripened. (*Id.* at 4.) That same day, we also issued opinions on three motions for summary judgment. (Dkt. Nos. 475–76.)

Seven months later, on November 3, 2011, Dunn filed a notice of bankruptcy. (Dkt. No. 480.) We held several status hearings over the course of the following months, addressing how to proceed in light of Dunn's bankruptcy. (Dkt. Nos. 482–85.) Hannah appeared by phone for the January 23, 2012 and July 12, 2012 conferences but, to date, has not participated in any further conferences. (Dkt. No. 484, 485, 487, 499–500, 503.) On July 26, 2012, CMD filed its own notice of bankruptcy, resulting in a complete stay of this litigation. (Dkt. Nos. 488, 495.)

At a status conference on September 19, 2013, the parties informed us that they expected to reach an agreement to walk away from the litigation, with all parties to bear their own costs and fees. (Dkt. Nos. 503–04.) On December 17, 2013, counsel requested additional time to finalize the walk-away agreement. (Dkt. No. 506.) We held a further status conference on

June 12, 2014, at which time counsel indicated that additional time was necessary to complete the agreement as the bankruptcies continued. (Dkt. No. 511.)

At the November 24, 2014 status conference, counsel represented that the bankruptcies had concluded and the walk-away agreement circulated. (Dkt. No. 513.) Counsel anticipated that the agreement would be fully executed within thirty days, unless counsel had trouble locating Hannah. (*Id.*)

By letter dated December 30, 2014, Plaintiffs' counsel described efforts to locate Hannah and obtain his cooperation. In light of that ongoing effort and the parties' need to collect other signatures, we granted the parties an extension of time, until February 27, 2015, to file their fully-executed stipulation of dismissal. (Dkt. No. 516.)

By letter dated February 24, 2015, Plaintiffs' counsel informed us that, although Hannah had stated by phone that he would sign the agreement, he had not yet provided his executed signature page. Counsel could not leave additional phone messages with Hannah because his mailbox was full. Moreover, according to the docket, mail sent to Hannah at his known address was returned as undeliverable. (Dkt. Nos. 517–18, 522.) We granted another extension for the parties to file their stipulation, until March 25, 2015. (Dkt. No. 519.) In the event that Hannah did not provide his signature page, we also instructed the parties to notice up a motion for default and affidavit of prove up to be heard at that time. (*Id.*)

We granted two additional extensions of time, as requested by the parties due to their inability to obtain an executed signature page from Hannah.[3] (Dkt. Nos. 521 (extension to

---

[3] Plaintiffs' counsel's letter of March 20, 2015 indicated that counsel had received Hannah's signature page, but apparently that report was premature.

4/30/15) & 525 (extension to 7/20/15).) According to Plaintiffs' counsel, Hannah has informed counsel during recent months that his signature page would be forthcoming and at one point sent a text message with a picture of the signed page. Yet, despite these representations and the diligent efforts of Plaintiffs' counsel and staff, Hannah has not provided his original, executed signature page.

**DISCUSSION**

Lacking Hannah's signature page, the parties are unable to file their stipulation as ordered. We have given counsel and Hannah ample time to take care of any logistical problems. Yet, although he has been informed by counsel of this important issue and the various court deadlines, Hannah remains unwilling to act. Under these circumstances, we grant Hannah one final opportunity to participate. Counsel for the parties, and Hannah, shall appear in person for a final status hearing on December 4, 2015 at 10:00 a.m. (Honolulu time). We will strike the hearing if Hannah provides his signature page, and if the parties file their stipulated dismissal, on or by October 1, 2015.

The other parties to the litigation have agreed to dismiss their claims against Hannah and each other as set forth in the walk-away agreement. We will permit them to proceed with the terms of that agreement, even if Hannah does not sign it and does not appear at the hearing.

As to Hannah's counterclaims, we find that his total lack of cooperation and participation in this lawsuit, and its potential resolution, warrant dismissal for failure to prosecute under Federal Rule of Civil Procedure 41. In considering a Rule 41(b) involuntarily dismissal, we weigh several factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public

policy favoring disposition of cases on their merits and (5) the availability of less drastic sanctions." *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986); *see Omstead v. Dell, Inc.*, 594 F.3d 1081, 1084 (9th Cir. 2010); *In re Phenylpropanolamine Prods. Liability Litig.*, 460 F.3d 1217, 1226–29 (9th Cir. 2006); *Lalau v. City and Cty. of Honolulu*, 938 F. Supp. 2d 1000, 1008–09 (D. Haw. 2013). With respect to the first factor, we note that "delay in reaching the merits, whether by way of settlement or adjudication, is costly in money, memory, manageability, and confidence in the process." *In re Phenylpropanolamine Prods. Liability Litig.*, 460 F.3d at 1227. As to the third factor, the Ninth Circuit has held that defendants suffer "prejudice if the plaintiff's action impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case." *Id.* (internal quotation omitted).

The majority (if not all) of these factors currently favor dismissal of Hannah's counterclaims becaused he has shirked his obligation to pursue them—by, for example, failing to respond to Dunn's default judgment motion. He also has impeded resolution of this matter by failing to deliver his signature page or to express any contrary opinion about the walk-away agreement that might enable further progress. Hannah, at times, has made himself unavailable to the court and the parties, whose efforts to contact him by mail or by phone have failed. His history of failing to engage indicates that he does not take this litigation seriously and has no intention of pursuing his counterclaims to any resolution. This conduct suggests that no sanction short of dismissal could spur Hannah into action.

Based on these circumstances, we find that Hannah's deliberate delay in responding to repeated requests from counsel and orders of the court is unreasonable. We caution Hannah that this is his final opportunity to participate in the litigation and its resolution. *See, e.g.*, D. Haw.

L.R. 99.12 (requiring notice and an opportunity to be heard prior to dismissal of an action in which a pro se litigant "is not prosecuting the case with diligence to take all necessary steps to bring the action to readiness for pretrial and trial"). The parties have negotiated a walk-away agreement in good faith to settle this lawsuit. We cannot permit Hannah's uncooperativeness to deprive the other parties of resolution and force this case to languish on our docket for no reason.

**CONCLUSION**

As set forth above, counsel for the parties, along with Hannah, shall appear in person for a status hearing on December 4, 2015. We will strike the hearing if Hannah provides his signature page, and if the parties file their stipulated dismissal, on or by October 1, 2015.

It is so ordered.

Marvin E. Aspen
United States District Judge

Dated: July 28, 2015
Chicago, Illinois